# EXHIBIT A

*State v. Thompson*, 2010 UT App 141U

State v. Thompson, Not Reported in P.3d (2010)
2010 UT App 141

2010 WL 2133049

UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.

Court of Appeals of Utah.

STATE of Utah, Plaintiff and Appellee,
v.
Wesley THOMPSON, Defendant and Appellant.

No. 20090054-CA.
|
May 27, 2010.

Fourth District, Provo Department, 081401817; The Honorable James R. Taylor.
**Attorneys and Law Firms**
Margaret P. Lindsay, Spanish Fork, for Appellant.
Mark L. Shurtleff and Ryan D. Tenney, Salt Lake City, for Appellee.
Before Judges DAVIS, ORME, and ROTH.

**MEMORANDUM DECISION**
(Not For Official Publication)
PER CURIAM:
*1 Defendant Wesley Thompson appeals his sentence on convictions, based on guilty pleas, of one count of attempted sexual abuse of a child, a third degree felony, and two counts of sexual abuse of a child, second degree felonies.

"[A] trial court's sentencing decision will not be overturned unless it exceeds statutory or constitutional limits, the judge failed to consider all legally relevant factors, or the actions of the judge were so inherently unfair as to constitute abuse of discretion." *State v. Killpack,* 2009 UT 49, ¶ 59, 191 P.3d 17. "[T]he decision of whether to grant probation must of necessity rest within the discretion of the judge who hears the case ." *Id.* ¶ 58. Thompson argues, relying on *State v. Moreno,* 2005 UT App 200, 113 P.3d 992, that the district court was required to identify, on the record, the aggravating and mitigating circumstances affecting its decision to sentence him to prison. The State correctly notes that *Moreno* addressed a specific statutory requirement for findings to be made in support of imposing the greater or lesser of three mandatory minimum prison terms for the offense of sodomy on a child, *see id.* ¶ 9 (stating that by statute, the court was required to impose the mandatory term of middle severity unless the court identified circumstances on the record that supported the greater or lesser minimum mandatory sentence). Thus, Thompson's reliance upon *Moreno* is misplaced. The district court was not required to make findings supporting its imposition of a prison sentence. *See State v. Helms,* 2002 UT 12, ¶ 11, 40 P.3d 626 ("Neither our case law nor our statutes require a trial court to make specific findings of fact in a sentencing order.").

Thompson next argues that the district court did not consider all relevant sentencing factors and focused solely on protection of the community by sentencing Thompson to prison. Thompson further argues that there was an "immediately available treatment option" at Bonneville Community Correctional Center (Bonneville) and that there was a "consensus between the defense and the State concerning the appropriate nature of supervised treatment in lieu of prison." This mischaracterizes the situation existing at sentencing. The prosecution agreed to recommend treatment but expressed concern that budgetary constraints might impact the availability of treatment. Although defense counsel stated that a bed was immediately available based upon counsel's visit roughly one month before sentencing, a note from Bonneville stated that, while the court "can order Bonneville Treatment Program without a diagnostic evaluation," it would prefer "that Mr. Thompson remain in custody pending an open bed."

The district court considered and rejected probation and treatment as an option based on the information before it at sentencing, including the presentence investigation report (PSI) and the psychosexual evaluation, which both recommended prison; rejected Thompson as a candidate for probation; and recommended that he receive treatment before being considered for parole. The PSI concluded that Thompson was in a high risk category to reoffend. The district court specifically referred to the note from Bonneville, the PSI, and the psychosexual evaluation at sentencing. The district court heard argument from defense counsel on mitigating circumstances and comments from parents of the minor victims. Ultimately, the district court ruled that it was unwilling to take the risk that Thompson could be released into the community without treatment. The decision to sentence Thompson to prison,

rather than to probation and treatment, was not an abuse of discretion or inherently unfair.

*2 Thompson argues that the district court erred by failing to make findings on the record regarding the gravity and circumstances of his offense; the number of victims; and his history, character, and rehabilitative needs, before sentencing him to consecutive prison terms. *See* Utah Code Ann. § 76–3–401(2) (2008) (enumerating factors to be considered in determining whether to impose concurrent or consecutive sentences). However, "as a general rule, this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *Helms,* 2002 UT 12, ¶ 11. Neither Utah case law nor Utah statutes require "a trial court to make specific findings of fact in a sentencing order." *Id.* ¶ 12.

Furthermore, "sentencing reflects the personal judgment of the court, and consequently, a sentence imposed by the trial court should be overturned only when it is inherently unfair or clearly excessive." *Id.* ¶ 14. The PSI and psychosexual evaluation contained detailed information about the offenses, Thompson's background and criminal history, his diagnoses, his cognitive ability, his treatment needs, and his risk to reoffend. The district court specifically referred to the PSI and psychosexual evaluation at sentencing. This demonstrates that the court considered the information contained in those reports, as well as the arguments of counsel and the statements made on behalf of the victims. The district court obtained clarification of the number of victims, discussed Thompson's treatment needs, and balanced those needs with the need to protect the community.

Accordingly, the district court considered the relevant factors in sentencing Thompson to consecutive sentences. In addition, the sentence was neither excessive nor inherently unfair. Therefore, we affirm.

**All Citations**

Not Reported in P.3d, 2010 WL 2133049, 2010 UT App 141